UNITED STATES of America,

v.

WAI HO TSANG, and Perry Hoo, Defendants.

No. 84 Cr. 1025 (RWS).

United States District Court, S.D. New York.

April 11, 1986.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for U.S.; Steven A. Standiford, Asst. U.S. Atty., Nancy Ryan, Special Asst. U.S. Atty., of counsel.

Roger Schwarz, New York City, for defendant Wai Ho Tsang.

Daniel Noble, New York City, for defendant Perry Hoo.

*OPINION*

SWEET, District Judge.

Pretrial motions in this 25-defendant RICO prosecution have been brought by

Perry Hoo ("Hoo") and Wai Ho Tsang ("Tsang"). A factual description of the underlying indictment is set forth in this court's opinion of December 24, 1986, familiarity with which is assumed. In these motions, Hoo moves to strike the indictment against him for failure to allege acts of racketeering which are chargeable under state law, for lack of adult criminal jurisdiction and for prejudicial preindictment delay. Tsang has moved for the suppression of certain identification evidence. For the reasons set forth below, Hoo's motion will be denied except insofar as its requests a hearing on the issue of preindictment delay and Tsang's motion will be denied pending a hearing at the time of trial.

## I. *Motion of Perry Hoo*

Hoo is charged with seven acts of racketeering in connection with his indictment on both a substantive and conspiracy count of violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"). He is also charged with an independent count alleging obstruction of interstate commerce by robbery. The acts of racketeering are each based on violations of state law and include conspiracy to extort property and extortion; operation of a gambling business; conspiracy to rob and robbery, and conspiracy to murder, attempted murder and murder.

Hoo was born on December 14, 1963 and the predicate acts are alleged to have occurred from 1977 through 1982. Therefore, several of the acts are predicated on criminal conduct by Hoo when he was only 15, 16, and 17 years old. Hoo asserts that, due to his young age at the time of committing these acts, he either could not have been prosecuted as an adult under New York law or would have been entitled to judicial review of his status before being prosecuted as an adult, and therefore these acts do not constitute acts of racketeering within the meaning of RICO.

Title 18, Section 1961(1)(A) of the United States Code, defines racketeering activity to include "any act ... chargeable under state law and punishable by imprisonment for more than one year." There is no question that the conduct charged in each of the acts specified against Hoo constitute crimes punishable in New York by imprisonment for more than one year. However, Hoo argues that under the law of New York, he in particular could not have been charged and punished by imprisonment because of his juvenile status at the time he committed these acts. As pointed out by Hoo, the New York State Family Court Act provides not for "imprisonment," but merely for "placement" of those juveniles found to be delinquent. N.Y.Fam.Ct. Act § 353.-3. *See also United States v. Gonzalez-Cervantes*, 668 F.2d 1073, 1076 (9th Cir. 1981) ("Adjudication of juvenile delinquency is not a conviction of a crime, but rather, a determination of a juvenile's status.")

New York law provides that, except for certain specified offenses, a person less than sixteen years old is not criminally responsible for his conduct. N.Y. Penal Law § 30.00. Lack of criminal responsibility by reason of infancy must be raised by the defendant as a defense to a prosecution. Hoo argues that the predicate acts charging him with conspiracy, extortion, and perhaps robbery are insufficient since he could not be held criminally responsible for those acts under New York law.

In addition, Hoo claims that with regard to the other predicate acts alleging criminal conduct before he became 18 years old, New York law would provide him with the opportunity to seek removal of an indictment to family court for proceedings as a juvenile delinquent rather than as an adult offender. Without having been afforded the opportunity to seek this judicial review, Hoo asserts that state law does not conclusively require "imprisonment" under the definition provided by RICO for these acts of racketeering.

While Hoo has raised issues that might seriously challenge a New York state court prosecution for the acts described above, the most recent interpretations of RICO establish that such state law defenses and procedural requirements are not incorpo-

rated into the federal statute. The Second Circuit has conclusively stated that:

> We are satisfied that Congress did not intend to incorporate the various state's procedural and evidentiary rules into the RICO statute. The statute is meant to define, in a more generic sense, the wrongful conduct that constitutes the predicates for a federal racketeering charge.

*United States v. Paone*, 782 F.2d 386, 393 (2d Cir.1986). In reaching the conclusion stated above, the court dismissed the defendants' claim that he could not be charged under the federal RICO statute since New York law barred conviction of certain offenses without corroboration of accomplice testimony. Other circuits have reached similar conclusions that state law restrictions on evidence and punishment are not relevant to a federal prosecution based on predicate acts chargeable under state law. *See, e.g., United States v. Brown,* 555 F.2d 407, 418 n.22 (5th Cir. 1977); *United States v. Licavoli,* 725 F.2d 1040, 1047 (6th Cir.1984).

▇▇▇ Under these decisions, a defendant may not defend a RICO prosecution based on an alleged failure to adhere to all of particular elements of state law which a defendant could invoke in a state prosecution. Instead, a federal court may only look to state law to determine whether the conduct is punishable by more than one year, not whether this particular defendant may be punished for the conduct. Given this restriction on the incorporation of state law in a federal RICO prosecution, Hoo's motion for dismissal must be denied since it is premised on state law defenses and procedural remedies not contemplated by the definition of an act of racketeering in § 1961(1)(A).

▇▇▇ While the juvenile delinquency provisions of New York law are simply irrelevant to this federal prosecution, it is of course necessary to examine the Federal Juvenile Delinquency Act ("JDA"), 18 U.S.C. §§ 5031–42, which Hoo also raises as a defense to this prosecution. The JDA sets forth special procedures for federal prosecution and punishment for an act of juvenile delinquency, which is defined to be a violation of a federal law committed by a person before his eighteenth birthday. Not all acts of juvenile delinquency are subject to the restrictions of this Act, however, since jurisdiction is based on whether the person charged is a juvenile. Section 5031 states that:

> For the purposes of this chapter, a "juvenile" is a person who has not attained his eighteenth birthday, or for the purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday....

As contemplated by this definition, a person who has committed an alleged criminal act before his eighteenth birthday may not be entitled to the protection of the JDA if criminal proceedings commence after he becomes twenty-one years old. The case law on this subject also confirms that an indictment filed after the defendant's twenty-first birthday lies beyond the jurisdiction of the JDA.

In *United States v. Araiza-Valdez,* 713 F.2d 430 (9th Cir.1980), the defendant was charged with attempting to smuggle drugs into the United States when he was 17 years old. An arrest warrant was issued but the defendant remained a fugitive for seven years. Finally, when the defendant was 24 years old, he was arrested and indicted. The Ninth Circuit held that since the Act is intended to provide a procedural mechanism for handling cases involving juveniles, the date of the indictment should determine whether a person should be prosecuted as an adult or a juvenile. *Id.* at 432. Similarly, in *United States v. Doe,* 631 F.2d 110, 112–13 (9th Cir.1980), the court held that the filing of an information before the accused person's twenty-first birthday established juvenile jurisdiction under the Act which was not defeated by an adjudication which extended beyond the time when the accused turned twenty-one. *Compare United States v. Spoone,* 741 F.2d 680 (4th Cir.1984) (acts of juvenile delinquency

dropped in an adult prosecution against a defendant less than twenty-one years old).

The indictment in this case was filed on December 27, 1984, several weeks after Hoo's twenty-first birthday. Therefore, in accordance with the principles discussed above, the acts committed by Hoo prior to his eighteenth birthday may properly be prosecuted in this court. It must also be noted, however, that under the circumstances in *Araiza-Valdez*, it was unnecessary to confront the issue of prejudicial pre-indictment delay, since the defendant as a fugitive was entirely responsible for the delay between the occurrence of the criminal conduct and his indictment. Here, however, Hoo asserts that his indictment was delayed in order to preclude him from seeking the protection afforded by the JDA.

■ A claim of prejudicial preindictment delay is based on considerations of due process and is applicable where the defendant has demonstrated purposeful delay by the prosecutor resulting in actual prejudice to the defendant's ability to obtain a fair trial. *See Lovasco v. United States*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Birney*, 686 F.2d 102, 105 (2d Cir.1982).

■ As set forth above, the delay in bringing this prosecution has resulted in Hoo's change in status from a juvenile to an adult offender. This change is not inconsequential since it at least deprived Hoo of a judicial hearing on whether it would be in the interests of justice to prosecute him as an adult rather than as a juvenile. 18 U.S.C. § 5032. *See generally Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). Since the JDA does not require a prosecution to be initiated on acts of juvenile delinquency before the defendant turns twenty-one, Hoo does not have an absolute right to the protective jurisdiction of the JDA. Nevertheless, given the apparent prejudice to Hoo, the preindictment delay would violate the Due Process Clause were it to be established that the delay was due to "unjustifiable Government conduct," *United States v. Elsbery*,

602 F.2d 1054, 1059 (2d Cir.1979), or illegitimate prosecutorial motives. *United States v. Lane*, 561 F.2d 1075, 1077 (2d Cir.1977). *See also United States v. Birney, supra*, 686 F.2d at 105 n. 1. Therefore, Hoo's request for a hearing to examine whether there was an illegitimate basis underlying the delay in filing the indictment will be granted. The hearing will be conducted on April 25, 1986 at 9:30 a.m.

## II. *Motion of Wai Ho Tsang*

Among other acts, Tsang is charged with Act of Racketeering Sixty-Four which alleges a conspiracy to murder individuals in Chicago, Illinois, and the murder of William Chin. In pretrial discovery, the government disclosed that Tsang had been identified by civilian witnesses from a photographic display. The affidavit of Nancy Ryan, which recounts a conversation with Detective Joseph Carone of the Chicago Police Department, sets forth her understanding of the identification procedures undertaken by Carone and other detectives in Chicago. According to Ryan, a set of fifteen photographs were displayed to the civilian witnesses. Each of the photographs, copies of which have been submitted to the court in connection with this motion, is a black and white mug shot of a male oriental with front and profile views and a New York police department identification number. The photographs were shown to the witnesses on August 18, 1980, nine days after the Chicago shooting occurred. Tsang remained a fugitive until November, 1981, at which time he surrendered. The charges against him in Chicago were eventually dismissed.

■ Tsang asserts here that the use of mug shots in an identification procedure was unduly suggestive and also requests a hearing to reveal any other indicia of suggestiveness. With regard to Tsang's direct attack on the mug shots, he has cited no case, and this court's research has failed to uncover any precedent, which has held that the showing of mug shots themselves demonstrates that the identification procedure

was unduly suggestive. In contrast, the only challenges to the use of mug shots which have seriously been considered are in those instances where the police photographs have been introduced as evidence or when explicit reference to them has been made before a jury. In such circumstances, given the fact that "mug-shots are generally indicative of past criminal conduct, and will likely raise the inference of past criminal behavior in the minds of a jury ..., [a]dmission of mug-shots, therefore, generally runs headlong into rules of evidence prohibiting the introduction of remarks or testimony regarding the [defendant's] bad character or past criminal record." *United States ex. rel Bleimehl v. Cannon,* 525 F.2d 414, 416–17 (7th Cir. 1975). *See also United States v. Harrington,* 490 F.2d 487, 495 (2d Cir.1973) (recommending against the introduction of mug shots except through the use of photographic duplicates without the "incriminating indicia" of criminality).

In keeping with these considerations, appropriate precautions should be taken by the prosecution at trial to avoid prejudicial references to mug shots used in a photographic display. *See United States v. Oliver,* 626 F.2d 254, 263–64 (2d Cir.1980). Nevertheless, the identification procedure itself is not tainted by their use. Moreover, the adoption by police of a lineup rather than a photographic display is neither constitutionally required, *see United States v. Boston,* 508 F.2d 1171, 1176–77 (2d Cir.1974), nor was it practically feasible since Tsang was not even in custody at the time.

Although Tsang has thus far failed to demonstrate any suggestive characteristics of the photographs used in the Chicago identification, the number and similarity of the photographs do not exhaust the possibility of suggestiveness arising from an identification procedure. Also important are any statements and indications made by the police officers when presenting the photographs for identification. *See Simmons v. United States,* 390 U.S. 377, 383–84, 88 S.Ct. 967, 970–71, 19 L.Ed.2d 1247 (1968). Tsang has not yet had an opportunity to explore these aspects of the identification. Since it is preferable to consider the possibility of suggestiveness outside the presence of the jury, *Watkins v. Sowders,* 449 U.S. 341, 345–46, 101 S.Ct. 654, 657–58, 66 L.Ed.2d 549 (1981), a brief hearing will be conducted prior to admitting any witness' identification testimony in connection with the Chicago murder.

*Conclusion*

For the foregoing reasons, the motions of Hoo and Tsang are denied pending further hearings.

IT IS SO ORDERED.