UNITED STATES of America, Appellee,

v.

Perry HOO, Defendant-Appellant.

No. 1239, Docket 87–1108.

United States Court of Appeals,
Second Circuit.

Argued June 3, 1987.

Decided Aug. 3, 1987.

Daniel Nobel, New York City, for defendant-appellant.

Steven A. Standiford, Asst. U.S. Atty., S.D.N.Y., New York City (Rudolph W. Giuliani, U.S. Atty. S.D.N.Y., Bruce A. Green, Asst. U.S. Atty., Nancy E. Ryan, Sp. Asst. U.S. Atty., of counsel), for appellee.

Before NEWMAN and WINTER, Circuit Judges, and BONSAL,* Senior District Judge.

WINTER, Circuit Judge:

Two weeks after his twenty-first birthday, Perry Hoo was indicted for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., 1962(c)–(d) (1982). Hoo moved to dismiss the indictment on the ground that the government's delay in filing it denied him the protections afforded juveniles under the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031–5042 (1982 & Supp. III 1985) and his rights under the due process clause of the fifth amendment. Judge Sweet denied the motion. Hoo subsequently entered a conditional plea of guilty to the RICO charges but reserved the right to appeal from the denial of his motion. We affirm.

## BACKGROUND

On December 27, 1984, the government filed an indictment charging Hoo and twenty-four other defendants with operating as a RICO enterprise a youth gang known as the "Ghost Shadows." All twenty-five defendants were charged with at least one act of racketeering involving either murder or conspiracy to commit murder. Hoo was charged with seven acts of racketeering that involved gambling, conspiracy to commit extortion, extortion, conspiracy to commit robbery, robbery, conspiracy to commit murder, attempted murder and murder. All of these crimes allegedly occurred during his teenage years, and the government conceded in Hoo's plea agreement that it possessed no evidence that Hoo had participated in the racketeering enterprise between his eighteenth birthday and the end of the period covered by the indictment. Accordingly, had the indictment against Hoo been filed before his twenty-first birthday—December 14, 1984—Hoo would have been entitled to the protection of the Juvenile Delinquency Act. See 18 U.S.C. §§ 5031–5042 (1982). Instead, however, the indictment was filed on December 27, 1984.

On January 2, 1986, Hoo moved to dismiss the indictment against him. He claimed, *inter alia*, that the government's delay in filing the indictment was prejudicial and violative of due process because it had caused him to lose procedural rights under the JDA. The district court held that Hoo did not have an absolute right to the procedural protections of the JDA because the statute did not require that prosecutions for acts of juvenile delinquency be initiated before the defendant's twenty-first birthday. *United States v. Wai Ho Tsang*, 632 F.Supp. 1336, 1339 (S.D.N.Y. 1986). Nevertheless, the court held that "were it to be established that the delay was due to 'unjustifiable Government conduct,' ... or illegitimate prosecutorial motives," the preindictment delay would constitute a violation of Hoo's due process rights. *Id.* (citations omitted).

Accordingly, the court held a hearing to determine the reasons for government's de-

---

* The Honorable Dudley B. Bonsal, Senior United States District Judge for the Southern District of New York, sitting by designation.

lay in filing the indictment. The sole witness, Special Assistant United States Attorney Nancy E. Ryan, testified that the government had begun its investigation of the Ghost Shadows in April 1982 and had begun presenting evidence to a federal grand jury in January 1984. She also stated that from the outset of its investigation, the government had been aware of Hoo's criminal activities. Nevertheless, she testified that the government had been unable to obtain "the most important evidence against him"—evidence of Hoo's participation in the murder of Puk Chui—until December 13, 1984, the day before Hoo's twenty-first birthday. She further testified that, although she had at one point discussed with other prosecutors the general effect that the Juvenile Delinquency Act might have on the case, she did not realize until approximately December 19, 1984 that Hoo had just reached the age of twenty-one. Finally, she stated that the government had not sought a tactical advantage over Hoo by delaying the filing of the indictment.

After the hearing, Judge Sweet concluded that the government had engaged in "entirely appropriate investigatory conduct." In particular, he concluded that evidence of the murder of Puk Chui was "a significant part of the government's case," and that the government had not obtained detailed evidence about the murder until the day before Hoo's twenty-first birthday, when an important witness had agreed to cooperate with the government and had testified about the murder before the grand jury. Judge Sweet also found that "[a]t no time during this period in late 1984 was there any consideration given to the effect of an indictment on Hoo's [juvenile] status." Accordingly, the court denied Hoo's motion to dismiss the indictment.

## DISCUSSION

As amended in 1974, the Federal Juvenile Delinquency Act establishes certain procedural protections for juveniles, enumerated in the margin,[1] that may remove them from the ordinary criminal justice system and place them in a separate scheme of treatment and rehabilitation. The Act applies only to the prosecution of "juveniles" who are charged with having committed acts of "juvenile delinquency." See 18 U.S.C. § 5032 (Supp. III 1985). The terms "juvenile" and "juvenile delinquency" are defined in 18 U.S.C. § 5031 (1982), which provides that

> [f]or the purposes of this chapter, a "juvenile" is a person who has not attained his eighteenth birthday, *or for the purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday,* and "juvenile delinquency" is the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult.

(emphasis added).

In applying Section 5031, the courts have consistently held that a defendant

---

1. The Act sets forth, *inter alia,* the prerequisites for the exercise of federal jurisdiction over juvenile defendants, standards governing the disposition of juveniles found to be delinquent and the procedures for the transfer of juveniles to adult status. Specifically, a juvenile alleged to have committed an act of juvenile delinquency may not be prosecuted in a federal district court unless the Attorney General certifies to the court that (1) state courts either do not have, or will refuse to exercise, jurisdiction over the juvenile; (2) the appropriate state does not have "available programs and services adequate for the needs of juveniles"; or (3) the offense charged is a "crime of violence that is a felony," or is one of several specifically enumerated narcotics-related offenses. 18 U.S.C. § 5032 (Supp. III 1985). The Act also provides that a juvenile who is adjudicated to be a delinquent may be placed on probation or may be committed to the custody of the Attorney General, 18 U.S.C. § 5037 (1982), but may not be "placed or retained in an adult jail or correctional institution." 18 U.S.C. § 5039 (1982). When a juvenile who is not a previous offender is alleged to have committed a violent felony or one of several specified narcotics-related offenses, the Attorney General may make a motion to transfer the juvenile to adult proceedings. This motion may be granted if the district court "finds, after hearing, [that] such transfer would be in the interest of justice" given, among other things, the juvenile's age, background and maturity. 18 U.S.C. § 5032 (Supp. III 1985). For certain previous offenders, however, transfer is automatic. *Id.*

who is alleged to have committed a crime before his eighteenth birthday may not invoke the protection of the Juvenile Delinquency Act if criminal proceedings begin after the defendant reaches the age of twenty-one. *See, e.g., In re Martin,* 788 F.2d 696, 697–98 (11th Cir.1986); *United States v. Araiza-Valdez,* 713 F.2d 430, 432–33 (9th Cir.1983); *United States v. Doe,* 631 F.2d 110, 112–13 (9th Cir.1980). Appellant nevertheless argues that we should construe the statute to extend its protection to defendants who could have been prosecuted earlier but, through no fault of their own, are indicted after their twenty-first birthdays. We disagree.

Appellant's proposed interpretation of the Juvenile Delinquency Act would render virtually meaningless the portion of Section 5031 that defines "a 'juvenile' ... for the purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency," as "a person who has not attained his twenty-first birthday." For this language to be given any effect, Section 5031 must be interpreted at least to require that the statute's provisions apply only to criminal proceedings that begin before the defendant reaches the age of twenty-one. Thus, Judge Sweet was clearly correct in holding that the provisions of the Juvenile Delinquency Act were not available to Hoo.

Appellant nevertheless contends that this interpretation of the Juvenile Delinquency Act violates the due process clause of the fifth amendment because it allows prosecutors to deprive defendants of the statutory right to a judicial determination as to whether juvenile proceedings should be required, *see supra* note 1, without due process of law. Relying on *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), appellant contends that the prosecutor's discretionary determination of the timing of the indictment (and thus the procedures to be accorded the defendant) should be subject to a hearing that comports with minimal standards of due process.

Appellant's reliance on *Kent* is misplaced. *Kent* involved a provision of District of Columbia law that permitted the Juvenile Court of the District of Columbia, "after full investigation," to waive its jurisdiction in favor of an ordinary trial before the United States District Court. *Id.* at 547, 86 S.Ct. at 1050. The Court held that the statute, "read in the context of constitutional principles," required the juvenile court, in deciding whether to waive its jurisdiction, to conduct a hearing and to explain its decision. The instant case, in contrast, involves not a judicial determination but instead the timing of a decision to prosecute. Unlike the judicial determination in *Kent,* the broad discretion of prosecutors has been rarely subject to judicial review. *See, e.g., Wayte v. United States,* 470 U.S. 598, 607–08, 105 S.Ct. 1524, 1531–32, 84 L.Ed.2d 547 (1985).

■ A similar argument was rejected in *United States v. Bland,* 472 F.2d 1329 (D.C.Cir.1972), *cert. denied,* 412 U.S. 909, 93 S.Ct. 2294, 36 L.Ed.2d 975 (1973), in which a juvenile defendant challenged the constitutionality of a provision of the District of Columbia Code that excluded from juvenile treatment individuals between the ages of sixteen and eighteen who were charged with certain crimes by the United States Attorney. The statute, in effect, linked juvenile status to the prosecutor's discretionary decision as to what charges to bring. In a claim that a hearing was necessary before the exercise of that discretion, the court observed:

The District Court and appellee in the case at bar point to the acknowledged significant effect of the United States Attorney's decision whether to charge an individual 16 years of age or older with certain enumerated offenses, and conclude that, in the absence of a hearing, due process is violated when such a decision is made. This, however, overlooks the significance of a variety of other common prosecutorial decisions, e.g., whether to charge one person but not another possible codefendant; whether to charge an individual with a misdemeanor or a felony; etc. Furthermore, the decision whether to charge an individual with a misdemeanor or a felony

has long determined the court in which that person will be tried. We cannot accept the hitherto unaccepted argument that due process requires an adversary hearing before the prosecutor can exercise his age-old function of deciding what charge to bring against whom. Grave consequences have always flowed from this, but never has a hearing been required.

*Id.* at 1336–37. Similarly, we believe that the due process clause does not require that decisions to prosecute be subjected to pre-indictment judicial inquiry simply because the timing of the decision affects the availability of juvenile procedures.

 Relying on cases involving prejudice caused by preindictment delay, appellant also contends that his right to due process was violated because the government, with "minimal effort," could have prevented him from suffering significant harm by filing its indictment only two weeks earlier. Because appellant has made no showing of an improper prosecutorial motive, however, we find no deprivation of appellant's constitutional rights.

In *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), the Supreme Court held that the due process clause requires the dismissal of an indictment because of preindictment delay only when the delay causes "substantial prejudice" to the defense and the delay is an "intentional device to gain tactical advantage over the accused." *Id.* at 324, 92 S.Ct. at 465. The reasons for placing such a heavy burden upon defendants are readily apparent. A rule such as that proposed by appellant—requiring in essence that prosecutors bring charges against twenty-year-olds as soon as they are able to do so—would "pressure prosecutors into resolving doubtful cases in favor of early—and possibly unwarranted—prosecutions." *United States v. Lovasco,* 431 U.S. 783, 793, 97 S.Ct. 2044, 2050, 52 L.Ed.2d 752 (1977). Moreover, such a rule would needlessly encourage "multiple trials" in cases, such as this one, that involve more than one defendant or more than one crime. *Id.* In any event, appellant has failed to show that

the government had improperly delayed his prosecution in order to gain a tactical advantage. Indeed, he does not contest the district court's conclusion that the prosecution had given no thought to the effect of the calendar upon Hoo's statutory rights. As the district court noted, the delay in filing the indictment was due entirely to legitimate considerations, such as the need to obtain evidence and the difficulties that necessarily arise in a complex RICO investigation. Accordingly, Judge Sweet quite properly refused to dismiss the indictment against Hoo.

Affirmed.