**UNITED STATES of America**

v.

**Alex RIVERA, Defendant.**

**No. 95 Cr. 858 (DC).**

United States District Court,
S.D. New York.

Dec. 18, 1995.

Mary Jo White, United States Attorney for the Southern District of New York, by John J. Rice, Douglas M. Lankler, Assistant United States Attorneys, New York City, for U.S.

Mitchell A. Golub, New York City, for Alex Rivera.

## OPINION

CHIN, District Judge.

In this RICO case, the Government alleges that on April 25, 1992 defendant Alex Rivera intentionally shot Francisco Nunez in the head, murdering him. At the time, Rivera was 17 years old. He was arrested in March 1995, when he was 20 years old. Although he should have been treated as a juvenile under the Juvenile Delinquency Act (the "Act"), 18 U.S.C. §§ 5031–5042, he was prosecuted as an adult because the Assistant United States Attorney then handling the matter made an inadvertent mistake when calculating his age.

Rivera now moves to dismiss the charges with prejudice on the grounds that his rights under the Act have been violated. Alternatively, he requests that the Government proceed against him as a juvenile. The Government opposes the motion, arguing that it must proceed against Rivera as an adult because he is now 21.

Although Rivera's rights under the Act were indeed violated, his motion to dismiss the indictment is denied. The Government will be required, however, to proceed against Rivera under the Act, for he cannot be deprived of his rights under the Act simply because a prosecutor made a mathematical error.

## BACKGROUND

### A. The Shooting [1]

On April 25, 1992, Rivera, Angel Alberto Then, Raul Cruz, Julio Morales and another individual commenced a search for Francisco Nunez. They were looking for Nunez to kill him in retaliation for purportedly stealing drugs and/or money from an organization engaged in the sale of narcotics. Then and Morales were involved with the organization in the selling of drugs. Morales recruited Rivera and Cruz to assist in the murder of Nunez.

At approximately 6:30 p.m., Rivera and Cruz found Nunez on St. Nicholas Avenue, between 191st and 192nd Streets, talking on a public telephone. Rivera walked up to Nunez and shot him in the head, killing him. Rivera then fled in a car driven by Cruz.

At the time, Rivera was 17 years old.

### B. The Prosecution

In March 1995, Rivera was arrested on a complaint that charged him with murdering Nunez. He was then 20 years old. The Assistant United States Attorney assigned to the case at the time made a mistake in his subtraction and miscalculated Rivera's age, erroneously concluding that he was 21. Accordingly, Rivera was treated as an adult.

Rivera was thereafter indicted with Angel Alberto Then and Raul Cruz under the Rack-

eteer Influenced and Corrupt Organizations Act, indictment number 95 Cr. 206 (the "original indictment"), for Nunez's murder. Then was also charged with certain drug violations.

Several days before the trial was to begin, the Government discovered the error in the calculation of Rivera's age and moved to dismiss the original indictment without prejudice because Rivera had been indicted as an adult for a crime allegedly committed when he was a juvenile. On September 22, 1995, I granted the motion by oral order, without prejudice to any claims that Rivera might have with respect to his rights under the Act. A new indictment was filed, number 95 Cr. 858 (the "second indictment"). At that point, Rivera was 21 years old, as he had turned 21 on June 21, 1995.

To avoid prejudicing the speedy trial rights of the other defendants pending resolution of the issues concerning Rivera, I severed Rivera from the case. Defendants Then and Cruz proceeded to trial under the second indictment. They were both acquitted on the murder charges, and Then was convicted of narcotics offenses.

The Government now seeks to proceed against Rivera as an adult under the second indictment, which was filed after Rivera turned 21. Rivera renews his request for dismissal with prejudice because he has been deprived of the protections accorded juveniles under the Act. Alternatively, he requests that the Government be required to proceed against him under the original indictment and in accordance with the Act.

## DISCUSSION

### A. The Act

The Act provides the exclusive means for the Government to proceed against juveniles in the federal courts. It applies to the prosecution of a "juvenile," defined as a defendant who is under age 21, for "an alleged act of juvenile delinquency," defined as a federal crime committed by a person prior to his or her 18th birthday. 18 U.S.C. § 5031. Under the Act, federal courts have limited jurisdiction over juveniles. See United States v. Chambers, 944

1. The facts alleged in the indictment are assumed to be true for purposes of this motion.

F.2d 1253, 1257–59 (6th Cir.1991) (limited federal jurisdiction reflects belief that states are better-equipped to treat juvenile offenders), *cert. denied*, 502 U.S. 1112, 112 S.Ct. 1217, 117 L.Ed.2d 455 (1992). For the United States to proceed against a juvenile, the Attorney General must certify the existence of (i) one of three specified needs for federal intervention and (ii) a substantial federal interest in the case or offense sufficient to warrant the exercise of federal jurisdiction. 18 U.S.C. § 5032; *see United States v. Wong*, 40 F.3d 1347, 1363 (2d Cir.1994) (discussing "need certification" requirement), *cert. denied*, —— U.S. ——, 115 S.Ct. 1968, 131 L.Ed.2d 858 (1995).

■ The Act seeks to remove juveniles from the criminal justice system so that they will avoid the stigma of a criminal conviction and to promote their rehabilitation. *United States v. Juvenile Male # 1*, 47 F.3d 68, 71 (2d Cir.1995). To effectuate these goals, the Act provides certain safeguards to juveniles who are prosecuted in the federal courts, such as limiting federal jurisdiction to serious offenses or cases in which a state prosecution would be inappropriate, permitting criminal prosecution of a juvenile as an adult only under specified circumstances, limiting detention periods, and sealing records of juvenile proceedings. *See* 18 U.S.C. §§ 5032, 5037, 5038. Of particular importance are the limited detention periods that apply to juveniles: under the Act, the maximum period of "official detention" for a "juvenile delinquent" may be substantially less than what he or she would face as an adult.[2] *See* 18 U.S.C. § 5037(c).

■ In certain circumstances, however, a juvenile may be treated as an adult. The Act provides that a district court may, on motion of the Attorney General, "transfer" a juvenile to adult status if it "finds, after hearing, such transfer would be in the interest of justice." 18 U.S.C. § 5032. *See generally United States v. Doe*, 49 F.3d 859, 867 (2d Cir.1995). After a "transfer" is ordered, the defendant loses the protections of the Act and is treated as an adult. Absent a transfer to adult status, a proceeding under the Act

results in an adjudication of status, rather than a criminal conviction. *United States v. Baker*, 10 F.3d 1374, 1393 n. 5 (9th Cir.1993) (citation omitted), *cert. denied*, —— U.S. ——, 115 S.Ct. 330, 130 L.Ed.2d 289 (1994).

In determining whether a transfer is in the interest of justice, the court must consider six factors: (1) the juvenile's age and social background; (2) the nature of the alleged offense; (3) the extent and nature of the juvenile's prior delinquency record; (4) the present intellectual development and psychological maturity of the juvenile; (5) past treatment efforts and the juvenile's response to them; and (6) the availability of programs designed to treat the juvenile's behavioral problems. 18 U.S.C. § 5032; *see United States v. Nelson*, 68 F.3d 583, 589 (2d Cir. 1995) (court is to consider juvenile's current age in weighing factors); *Doe*, 49 F.3d at 868 (government must establish propriety of transfer by preponderance of evidence).

The Act also provides for a mandatory transfer to adult status if a juvenile (i) is accused of committing a crime after his 16th birthday that involves the use of physical force and (ii) has previously been found guilty of an act equivalent to one of the offenses enumerated in section 5032. 18 U.S.C. § 5032; *see Wong*, 40 F.3d at 1364. Although the statute does not by its terms require a motion or a hearing for mandatory transfer, courts have held that these procedures are required. *See Juvenile Male # 1*, 47 F.3d at 69 (indicating that motion is required); *United States v. David H.*, 29 F.3d 489, 491 n. 5, 492 n. 7 (9th Cir.1994); *United States v. Brian N.*, 900 F.2d 218, 221 n. 4 (10th Cir.1990) (hearing required because court must make factual findings to determine whether mandatory transfer provision applies).

## B. *The Government's Failure to Comply With the Act*

In this case, Rivera was 17 years old when the crime was purportedly committed and he was 20 years old when the original indictment was filed. Hence, as the Government

---

**2.** Here Rivera would face a maximum of five years' detention if found to be a juvenile delinquent, *see* 18 U.S.C. § 5037(c), whereas if prosecuted as an adult he faces life in prison.

concedes, he should have been prosecuted as a juvenile, at least initially, after he was arrested in March 1995. *See United States v. Hoo,* 825 F.2d 667, 668, 670 (2d Cir.1987) (applicability of Act measured as of date proceedings instituted), *cert. denied,* 484 U.S. 1035, 108 S.Ct. 742, 98 L.Ed.2d 777 (1988); *In re Martin,* 788 F.2d 696, 697 (11th Cir.), *cert. denied,* 478 U.S. 1009, 106 S.Ct. 3306, 92 L.Ed.2d 719 (1986). Indeed, the Government concedes that it would have proceeded against Rivera pursuant to the Act but for the miscalculation of his age. (10/26/95 Tr. at 12).

The Government did not, however, comply with the Act in any respect. The Attorney General did not provide the certification required by the Act. The Government did not proceed by information, but instead indicted Rivera. The Government did not provide the juvenile court records, or a written certification of their unavailability, as required before a juvenile can be transferred to adult status. 18 U.S.C. § 5032. Nor does there appear to have been compliance with the Act's requirements that juveniles be detained only in certain institutions pending trial and that juveniles be brought to trial within 30 days after detention commences (unless time is excluded). 18 U.S.C. §§ 5035, 5036. *See Doe,* 49 F.3d at 865–66; *Baker,* 10 F.3d at 1396–97. Finally, of course, no motion has been made to transfer Rivera to adult status, and no hearing has been held on whether Rivera should be prosecuted as an adult. Rather, the Government simply proceeded against him as an adult.

### C. *Remedy*

■ The parties have proposed several possible remedies for the Government's failure to comply with the Act. Rivera requests that I dismiss the charges with prejudice. Alternatively, he suggests that I order the Government to proceed against him under the original indictment and in accordance with the Act. The Government opposes both requests, and suggests that I permit it to proceed against Rivera as an adult under the

second indictment because he has not been prejudiced.[3]

The Government's suggestion is unacceptable, for its assertion that Rivera has not been prejudiced by the violations of the Act is plainly wrong. Even if, as the Government argues, Rivera would have been transferred to adult status had the Act been complied with, the proceedings against him should have been sealed initially, he should not have been detained in an adult facility until the transfer, and he might have gone to trial long ago. Indeed, he has now been incarcerated since March 1995. If he is acquitted of the charges against him, and that is not unlikely in view of the acquittal of his former co-defendants, then he will have spent more than ten months in prison, without the protections of the Act, without any finding of guilt.

I cannot just ignore the violations of the Act, nor can I permit Rivera to be stripped of his rights under the Act, simply because an Assistant United States Attorney could not subtract properly. *Cf. Chambers,* 944 F.2d at 1260–61 (where certification was not tendered until close of government's case-in-chief at trial and district court did not hold a hearing on government's motion to transfer defendants to adult status, defendants' convictions were vacated subject to reinstatement after a hearing on remand on propriety of prosecuting defendants as adults).

■ On the other hand, Rivera's request for dismissal must also be rejected. Dismissal is too harsh a remedy, for at least three reasons. First, the Government's error in prosecuting Rivera as an adult was inadvertent and not the result of bad faith or any effort to gain a tactical advantage. *See Hoo,* 825 F.2d at 668, 671 (upholding conviction despite fact that indictment, which charged defendant with acts committed before he reached 18, was filed only two weeks after defendant turned 21, where defendant "failed to show that the government had improperly delayed his prosecution in order to gain a

---

**3.** The Government has even suggested that Rivera's only recourse is to seek civil remedies for the Government's failure to comply with the Act. (10/26/95 Tr. at 19). In view of what is at stake,

however, a civil suit surely would not provide an adequate remedy. *See Baker,* 10 F.3d at 1397 n. 6 (expressing no opinion as to appropriateness of civil remedies for violations of the Act).

tactical advantage"). Notably, Rivera has pointed to no evidence of bad faith on the part of the Government, *see* 10/26 Tr. at 6–7, and I accept the Government's explanation that the former prosecutor merely made an unintentional error in his arithmetic.

Second, I find that the defense must bear some of the responsibility. Although Rivera was in the best position to know his true age, he did not object to his prosecution as an adult until *after* the Government brought the issue to my attention, which it did as soon as it discovered that an error had been made. It is not clear whether defendant and his attorney knew of the Government's mistake and chose to remain silent for tactical reasons or whether they simply did not notice the error. Either way, they are not blameless. *See Doe*, 49 F.3d at 866 (affirming district court's finding that delay in proceedings against juvenile was attributable to defendant's failure to raise issue of his juvenile status); *Chambers*, 944 F.2d at 1260 ("[T]he defense was as much at fault as the government in failing to raise the issue of defendants' juvenile status at an earlier stage of the proceedings.").

█ Third, the charges in question are extremely serious, and the goals of the Act must be balanced "against the need to protect the public from violent and dangerous individuals." *Juvenile Male # 1*, 47 F.3d at 71. Indeed, Rivera is accused of executing a man in cold blood for $1,500. Hence, I will not dismiss the charges.[4]

█ Under the circumstances, I will grant Rivera's alternative request. I will require the Government to proceed against Rivera under the Act. The Government must now obtain the necessary certification from the Attorney General so that I will have jurisdiction over this matter. If the Government does so, it must then either obtain the juvenile court records or provide the "records certification." Thereafter, it may move to transfer Rivera to adult status. If the motion is granted, Rivera will be tried as an adult. If the motion is denied, he will be treated as a juvenile.

█ The Government's objections to the requested alternative relief are essentially three-fold. First, the Government is concerned that it is unable to proceed against Rivera as a juvenile because he has now reached age 21. I disagree. Although the Act applies only to juveniles, *see United States v. Smith*, 675 F.Supp. 307, 312 (E.D.N.C.1987), by necessity the Act must continue to apply to those defendants who are approaching 21 at the time the proceedings are instituted and attain that age before the proceedings are completed. *See United States v. Smith*, 851 F.2d 706, 710 (4th Cir. 1988) (the Act "contemplates that jurisdiction . . . is not automatically lost once [defendant] attains the age of 21"); *United States v. Doe*, 631 F.2d 110, 113 (9th Cir.) (recognizing uncertainty and waste of judicial resources that would result if juvenile jurisdiction terminated when alleged offender reaches 21), *cert. denied*, 449 U.S. 867, 101 S.Ct. 202, 66 L.Ed.2d 86 (1980); *see also Hoo*, 825 F.2d at 668, 670 (recognizing implicitly that the Act applies to defendants who are indicted before reaching age 21, even if approaching that age); 18 U.S.C. §§ 5037(b)(2), 5037(c)(2) (probation and detention periods set forth in the Act may extend beyond defendant's 21st birthday). Here, if the Act had been complied with, Rivera would have been treated, at least initially, as a juvenile. While it is true that the provisions of the Act would not have been invoked if the Government had waited until after Rivera turned 21, *see Hoo*, 825 F.2d at 670, the fact of the matter is the Government did not wait. Rather, it commenced criminal proceedings against Rivera

---

4. It should also be noted that violations of the Act have not always resulted in dismissal of the charges. *See, e.g., Doe*, 49 F.3d at 865–66 (delay may be excusable as attributable to defendant or necessary to serve interests of justice); *Wong*, 40 F.3d at 1364, 1369–71 (although "record certification" is prerequisite to federal jurisdiction, strict compliance with statute is not required); *Baker*, 10 F.3d at 1396–97 & n. 6 (affirming district court's refusal to dismiss indictment for procedural violations of the Act, discussing probable remedies for violation of Act, and noting that dismissal with prejudice might be appropriate for "aggravated or intentional" violations) (*citing United States v. Montalvo–Murillo*, 495 U.S. 711, 721, 110 S.Ct. 2072, 2079, 109 L.Ed.2d 720 (1990)).

before he turned 21.[5]

■ Second, the Government contends that compliance with the Act now is unnecessary because a motion to transfer Rivera to adult status would have been granted in any event, in view of the seriousness of the charges involved. This contention is rejected, for Rivera could not have been transferred to adult status without a hearing. *See Nelson,* 68 F.3d at 588 (government bears burden of establishing propriety of transfer to adult status because "there is a presumption in favor of juvenile adjudication") (citation omitted). In light of the fact-intensive inquiry mandated by the Act, I cannot say "to a moral and legal certainty" that no district court would have denied a motion to transfer Rivera to adult status. *See Brown v. Cox,* 481 F.2d 622, 627 (4th Cir.1973), *cert. denied,* 414 U.S. 1136, 94 S.Ct. 881, 38 L.Ed.2d 761 (1974).[6]

■ Finally, the Government proposes that instead of requiring it to comply with the Act now, I simply conduct a hearing to determine whether Rivera would have been transferred to adult status if he had been proceeded against as a juvenile. (10/26 Tr. at 13). This suggestion, however, ignores the critical issue of jurisdiction, and it ignores the entire structure of the Act. The Attorney General's certification is a jurisdic-

tional requirement, and without it I do not have jurisdiction over Rivera. *See Wong,* 40 F.3d at 1363; *Chambers,* 944 F.2d at 1259 ("[T]he certification requirement is a prerequisite to the district court's subject-matter jurisdiction in cases where the government proceeds against juveniles accused of performing acts which would be federal crimes if committed by adults."). Nor do I have jurisdiction by virtue of the fact that the Government failed to comply with the Act as it should have. Hence, the Government must obtain the certification now, or the charges against Rivera will be dismissed.[7]

### CONCLUSION

For the reasons set forth above, the second indictment, number 95 Cr. 858, is hereby dismissed as to Rivera. My order of September 22, 1995 is hereby vacated to the extent that it dismissed indictment number 95 Cr. 206 as to Rivera, and that indictment is reinstated with respect to Rivera only. The Government is to proceed against Rivera in accordance with the procedures set forth in the Act. The Government may seek the Attorney General's certification that the exercise of federal jurisdiction over Rivera is appropriate, provide the Court with defendant's juvenile records, and move to transfer

---

5. The Government's implicit suggestion that it may avoid its obligations under the Act because it did not initially comply with the Act makes no sense. Even where the Government does comply with the Act initially, it may not thereafter proceed except in accordance with the Act. *See, Smith,* 851 F.2d at 709–10 ("[O]nce the government invokes [the Act], it may not in the future proceed against the defendant except in accordance with [its] terms. . . ."). The Government should not be in a better position because it did not comply with the Act.

6. *Brown* involved a state transfer provision similar to that contained in the Act. In *Brown,* the petitioner was 17 at the time of the offense and was subject to juvenile jurisdiction at the time of his indictment. 481 F.2d at 624. The juvenile proceedings were later held to be flawed, however, and his conviction was vacated. 481 F.2d at 625. Subsequently, at the age of 23, the petitioner was re-indicted for the same offense, tried, and found guilty. 481 F.2d at 625. In denying his petition for a writ of *habeas corpus,* the Fourth Circuit recognized that the case called for

"a judicial determination of some kind that the petitioner has not been improperly prejudiced by the loss of the opportunity . . . to have opposed a transfer," but declined to accord petitioner a "reconstructed" transfer hearing because no court would have denied transfer. 481 F.2d at 626–27.

7. Courts have held, however, that the proceedings may commence before the certification is provided, in effect recognizing that the district court obtains subject matter jurisdiction *nunc pro tunc* upon receiving the certification. *See, e.g., Baker,* 10 F.3d at 1396 (noting that Act does not specify when certification must be filed); *Chambers,* 944 F.2d at 1260 (in light of defendants' failure to raise issue earlier, filing of Attorney General's certification at end of government's direct case held sufficient); *see also Wong,* 40 F.3d at 1369 ("Courts have . . . demonstrated flexibility with respect to the requirement for need certification.") (citations omitted). Thus, even at this juncture, any jurisdictional defect would be cured if the appropriate certifications were obtained.

Rivera to adult status as required by section 5032 of the Act.[8]

SO ORDERED.

8. These proceedings have not been sealed to date, and Rivera has not asked for the proceed- ings to be sealed. Moreover, he is now over 21. Hence, the proceedings will not be sealed now.