UNITED STATES of America, Appellee,

v.

Luis VARGAS, Defendant-Appellant.

No. 822, Docket 79–1373.

United States Court of Appeals,
Second Circuit.

Argued March 17, 1980.

Decided May 2, 1980.

Richard F. Guay, Asst. U. S. Atty., Eastern District of New York, Brooklyn, N. Y. (Edward R. Korman, U. S. Atty. for the Eastern District of New York, Mary McGowan Davis, Michael H. Soroka, Asst. U. S. Attys., Brooklyn, N. Y., of counsel), for appellee.

Barry Agulnick, New York City, for defendant-appellant.

Before MULLIGAN and OAKES, Circuit Judges, and POLLACK *, District Judge.

MULLIGAN, Circuit Judge:

Luis Vargas appeals from a judgment of the United States District Court for the Eastern District of New York which convicted him after a jury trial before Hon. Charles P. Sifton of (1) a conspiracy to import into the United States and to possess with intent to distribute quantities of cocaine in violation of 21 U.S.C. §§ 952(a), 960 and 841(a)(1), and (2) of importing approximately 30 lbs. of cocaine from Lima, Peru into the United States in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 18 U.S.C. § 2. Judgment was entered on September

---

* United States District Judge for the Southern District, sitting by designation.

24, 1979. Vargas was sentenced to concurrent eight year terms of imprisonment on the conspiracy and importation counts as well as concurrent ten year terms of special parole to be served thereafter. He is presently serving his sentence. We find the issues raised on this appeal to be without merit and affirm the judgment of conviction.

## I

The evidence at the trial established that on March 15, 1979 four pieces of furniture were shipped under a fraudulent air waybill from Lima, Peru and on March 24 arrived at the Lan Chile Airline Cargo Building, at John F. Kennedy (JFK) Airport, Jamaica, New York. After the furniture had been shipped from Peru, Vargas and three of his co-defendants left Lima, met in Panama and then came to New York where they stayed together first at the Hilton Hotel and then at the Seville Hotel in Manhattan.[1] Upon arriving in New York Vargas immediately contacted Ms. Anna Ortega, his cousin, who lived in upper Manhattan and was the named consignee of the furniture shipment. Ms. Ortega's son Carlos, who was fluent in English and Spanish, was enlisted to locate the furniture. Carlos made daily calls to Lan Chile Airlines and finally traced the furniture to JFK Airport.

During a routine customs examination, however, it was discovered that two pieces of the furniture had compartments in which were secreted some 27 lbs. of pure cocaine. It was repacked and the furniture was re-crated and placed in a Purolator security facility at the airport. When truckers arrived to pick up the furniture on April 2, two agents of the Drug Enforcement Agency (DEA) exchanged places with them and proceeded to move the furniture to the Ortega apartment, where they were introduced to Vargas by Ms. Ortega's daughter, who was bilingual. She described Vargas as the intended recipient of the furniture. Vargas paid a DEA agent the shipping

charges with two one hundred dollar bills and signed a receipt. The agents then proceeded to unload and uncrate the furniture and deliver it to the apartment. One agent noticed that in the apartment were three other pieces of furniture which were strikingly similar to the pieces being delivered. Vargas, whose cover story was that he was a furniture salesman, stated to the agent that he had shipped these pieces to the Ortegas the previous November but had not yet been able to sell them.

In the course of the moving operation one of the agents reported to a surveillance agent stationed outside the building that furniture containing cocaine had been delivered. This information was relayed to another agent who applied for and received a search warrant from a United States Magistrate in the Southern District of New York. Actually only one of the pieces containing cocaine had been delivered to the apartment at the time the warrant was issued, but within a half hour thereafter the moving operation had been completed.

The agents on the scene were by that time advised that the warrant had been issued. There were four young adults as well as the two Ortega children in the apartment in addition to Vargas. To minimize the danger to these other occupants, the agents knocked on the door and used the ruse that an additional signature was needed on the delivery papers. When the door was opened, they announced their true identities as well as the purpose of the search before entering. They observed Vargas poised over a mahogany bar that they had just delivered removing packing material which concealed the cocaine. Vargas was arrested and given his *Miranda* warnings in Spanish. The agents seized not only the furniture they had delivered but the three other pieces that Vargas had admitted importing the previous November. One was found to contain traces of cocaine.

■ Vargas' motion to suppress the evidence seized in the Ortega apartment on

---

1. While at the Seville, Vargas and three of his co-defendants were joined by a fourth co-conspirator. Prior to trial all four pleaded guilty to violations of 21 U.S.C. § 843 and were sentenced to four year terms of imprisonment.

April 2 was denied in a memorandum decision and order by Judge Sifton on June 29, 1979. On this appeal Vargas argues that the search warrant issued by the Magistrate was insufficiently precise. It provided for the seizure of "a quantity of cocaine, its containers and documentary evidence relating to the smuggling of said cocaine from Lima, Peru to the United States" on the premises of Apartment 6A, located at 854 W. 180th Street, New York City, New York. We agree with the court below that the description was sufficiently specific to permit the rational exercise of judgment in selecting what items to seize. *Marron v. United States*, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927). The warrant did not authorize such a broad "roving commission" as to be constitutionally offensive. *United States v. Scharfman*, 448 F.2d 1352, 1354 (2d Cir. 1971), cert. denied, 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972); see *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 2324, 60 L.Ed.2d 920 (1979).

■ Vargas further argues that the three pieces of furniture which were not part of the customs search were improperly seized. The court below held that this clearly incriminating evidence inadvertently came into plain view pursuant to a valid warrant which was based on probable cause under *Coolidge v. New Hampshire*, 403 U.S. 443, 464–73, 90 S.Ct. 2022, 2037–42, 29 L.Ed.2d 564 (1971) and was therefore properly seized. Vargas argues that since the DEA agent had observed the furniture prior to the issuance of the warrant the subsequent seizure could not be characterized as inadvertent. While the Government contends that the inadvertence requirement was either met or is not analytically supportable as a qualification to the plain view doctrine, see *United States v. Liberti*, 616 F.2d 34, 38 (2d Cir. 1980) (Newman, J., concurring), these are points we need not address. It is generally agreed that contraband may be seized without a warrant under the plain view doctrine without reference to the inadvertence qualification. *Lo-Ji Sales, Inc. v. New York, supra*, 99 S.Ct. at 2323 n.5; *United States v. Liberti, supra*, at 36; *United States v. Cutts*, 535 F.2d

1083, 1084 (8th Cir. 1976). Title 21 U.S.C. § 881(a)(1), (3) provides that no property right shall exist in "[a]ll controlled substances" and "[a]ll property which is used, or intended for use, as a container for" controlled substances. In *United States v. Johnson*, 572 F.2d 227, 234 (9th Cir.), cert. denied, 437 U.S. 907, 98 S.Ct. 3097, 57 L.Ed.2d 1137 (1978), the court held that a seizure for forfeiture does require probable cause, but the standard is "less precise and rigorous" than is required to obtain a warrant in ordinary circumstances. Moreover, the court stated that a container (in that case a vehicle) "may be seized even in the absence of probable cause to believe it contains contraband if there is nonetheless probable cause to believe that it was used 'to facilitate the transfer of contraband.' " *Id.*

■ In this case we are persuaded that the agents had probable cause to believe that the additional furniture seized had been used to transport cocaine. It bore a striking resemblance to the furniture which had been examined at JFK and which the agents knew for a certainty contained a massive amount of cocaine. Vargas, admittedly the true consignee of the later shipment, had stated to the agents that he had shipped the three other pieces to his cousin the previous November. A modus operandi was thus established. Had the DEA agents failed to recognize that there was probable cause to believe he was not a furniture salesman but was using the furniture as a container for a controlled substance, they would have been derelict in their duty. The motion to suppress with respect to those items was therefore properly denied.

■ Appellant's remaining arguments are unpersuasive. The use of a ruse by the agents to gain admission to the Ortega apartment after the issuance of the warrant was fully justified. Given the huge amount of pure cocaine known to be in the apartment and the presence of innocent children, it was wise to avoid a possible resort to violence. Even absent a warrant, stratagem or deception utilized to obtain

evidence is generally permissible. *Lewis v. United States*, 385 U.S. 206, 208–09, 87 S.Ct. 424, 426, 17 L.Ed.2d 312 (1966). Moreover, before even entering the apartment the agents announced their identity and purpose. The fact that they did not have the warrant physically in hand (it arrived ten minutes later) is of no moment, at least in these circumstances. It had already been authorized and issued by a magistrate and was in fact in transit to the scene. The agents were aware of its scope and the items to be seized.

We have examined appellant's other arguments and consider them to be totally without merit.