UNITED STATES of America,

v.

**Lonnie LAKE, Alphonse Lake, and Sylvester Lake, Defendants.**

**No. 01 CR 641(ADS).**

United States District Court, E.D. New York.

Oct. 24, 2002.

Roslynn R. Mauskopf, United States Attorney, Eastern District of New York, Central Islip, NY, by Richard P. Donoghue, Assistant United States Attorney, Elizabeth Macedonio, Esq., New York, NY, for Defendant Lonnie Lake.

Peter J. Tomao, Esq., Garden City, NY, for Defendant Alphonse Lake.

Glenn A. Obedin, Esq., Central Islip, NY, for Defendant Sylvester Lake.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case involves charges of narcotics possession, narcotics distribution, and gun possession. Presently before the Court is a motion by Lonnie Lake ("Lake") to: (1) suppress the statements he made to the police on January 7, 1999; (2) suppress the evidence seized from Lake's residence pursuant to a search warrant on January 7, 1999; (3) suppress the evidence related to the 1990 Toyota Celica; (4) suppress the evidence seized from Lake's residence on June 6, 2001; (5) dismiss counts one, two, six and eight of the indictment; and (6) sever counts six, seven and eight from the indictment. The Government opposes Lake's motions.

## I. BACKGROUND

The background of this case is incorporated in this Court's memorandum of decision and order dated October 5, 2002. Familiarity with the October 5, 2002 decision is assumed.

## II. DISCUSSION

### A. The Motion to Suppress the Physical Evidence Seized from Lake's Residence and the Statements Made by Lake on January 7, 1999

Lake alleges the following facts in support of his motion to suppress the physical evidence seized from his residence and the statements he made on January 7, 1999. Lake claims that on January 7, 1999, while driving a 1990 Toyota Celica, he was stopped by state officers and taken into custody. Lake claims that officers removed him from his vehicle, handcuffed him and placed him in the rear of a police car. Lake alleges that he was detained for several hours before the officers took him to his residence. When Lake and the officers arrived at his home, Lake maintains that one of the officers directly asked him if he had any guns, weapons or money in the house. Lake claims that the Government maintains that he responded by stating, "I have a gun in the bedroom." According to Lake, no *Miranda* warnings were given before he made this statement.

Lake further asserts that the officers asked him several questions about the vehicle he was driving. Lake claims that the Government alleges that officers had observed him using what they believed to be a hidden compartment under the driver's floorboard. According to Lake, upon the direction of the officers, he demonstrated how to open and close the compartment. Lake claims that the vehicle was seized and searched and that six months later an ionscan test was conducted on the compartment of the vehicle which revealed that it contained the presence of cocaine. Lake contends that no search warrant was issued for the vehicle.

Further, Lake alleges that when he was arrested on June 6, 2001, federal officers "forcibly made their way" into his residence, killed Lake's dogs and made a "complete search of the premises and seized documents" without a search warrant.

In its opposition papers, the Government claims that after Nassau County Judge Daniel R. Palmieri issued a search warrant for Lake's residence, state officers stopped Lake on January 7, 1999 as he was driving a 1990 Toyota Celica. At that time, the officers told Lake he was being arrested for narcotics offenses and transported him and the vehicle to the Narcotics Bureau of the Nassau County Police Department ("Narcotics Bureau"). According to the Government, when Lake arrived at the Narcotics Bureau, the detectives told him that they would not ask him

any questions and that he would be permitted to call his attorney after the search warrants were executed. The Government contends that after the officers informed Lake that they had a search warrant for his residence, Lake asked to return to his residence to lock up his dogs before the search warrant was executed so they would not be harmed by the officers. Based upon his request, the Government claims that Lake was taken to his residence.

Upon returning to his residence, Lake was seated in the rear of a police vehicle. The Government claims that detective Michael Beckett, who was seated in the police vehicle, told Lake he would not ask him any questions. The Government further contends that when Lake observed the officers entering his residence to conduct a search, he stated to Beckett, "I have a gun in the bedroom under the mattress" or words to that effect. The Government claims that before Beckett could relay the information to the other officers, the officers searching Lake's bedroom discovered a loaded and defaced Davis .380 caliber under Lake's mattress.

The Government further claims that because a crowd began to gather outside his residence, Lake was taken to his livingroom. While Lake was seated in his livingroom, an officer told detective Vincent Buscemi that a firearm had been recovered from the bedroom. The Government claims that when Lake heard the comment, he stated, "Vinnie, you know me, I just got that for protection." From the search of Lake's residence, the officers recovered evidence including a police scanner, scale, marijuana, cocaine residue, plastic baggies and telephone numbers of defendants Alphonse Lake and Sylvester Lake.

After the officers concluded the search of Lake's residence, he was taken back to the Narcotics Bureau. The Government contends that at the Narcotics Bureau, Lake asked what would happen to his vehicle. According to the Government, after detective John Hanrahan told Lake that the vehicle would be retained for time being because it contained a "trap," Lake responded that the trap was empty and offered to open the trap for the officers. The Government claims that pursuant to Lake's offer, the officers brought him to the vehicle and observed Lake open a hidden compartment under the driver's floorboard. The Government explains that although the officers observed Lake open the compartment, they did not direct him to do so. After state authorities contacted the Drug Enforcement Administration, a DEA technician conducted an ionscan test on the hidden compartment in the vehicle which had remained in the custody of state authorities. Laboratory results revealed that the compartment contained trace amounts of cocaine.

On June 6, 2001, federal and state agents arrested Lake at his residence pursuant to an arrest warrant. The Government alleges that after two of Lake's dogs attempted to attack the officers, the dogs were shot and killed. Following the arrest, the Government contends that the officers asked Lake if he would consent to a search of his residence, but because he refused to consent, no search was conducted.

### 1. As to the statements

█ Lake moves to suppress the statements he made on January 7, 1999 regarding the firearm seized and the hidden compartment in his vehicle on the ground that the statements arose from custodial interrogation. "The coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements." *Dickerson v. United States*, 530 U.S. 428, 435, 120 S.Ct. 2326, 2331, 147 L.Ed.2d 405

(2000). To prevent such coercion and safeguard a suspect's privilege against self-incrimination, law enforcement officers must provide a suspect with *Miranda* warnings prior to conducting a custodial interrogation. *See id.; United States v. Ramirez,* 79 F.3d 298, 304 (2d Cir.), *cert. denied,* 519 U.S. 850,519 U.S. 850, 117 S.Ct. 140, 136 L.Ed.2d 87 (1996). Interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980).

■ An evidentiary hearing on a motion to suppress "ordinarily is required if the moving papers are sufficiently definite, specific, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Pena,* 961 F.2d 333, 339 (2d Cir.1992) (citations and quotations omitted). A defendant seeking to suppress evidence bears the burden of showing the existence of disputed issues of material fact. *See Pena,* 961 F.2d at 338. Indeed, a district court is not required to hold an evidentiary hearing if the defendant's "moving papers did not state sufficient facts which, if proven, would have required the granting of the relief requested." *United States v. Culotta,* 413 F.2d 1343, 1348 (2d Cir.1969). Further, a court need not hold an evidentiary hearing when the "defendant's allegations are general and conclusory or are based on suspicion and conjecture." *United States v. Wallace,* 1998 WL 401534, *9 (S.D.N.Y. July 17, 1998).

■ In the present case, there does not appear to be a dispute as to whether *Miranda* warnings were given. Lake claims they were not, and the Government does not deny this assertion. However, Lake contends that although he had not yet been arrested, he was in custody at the time the statements were made and that he should have therefore been advised of his constitutional rights. Lake further argues that the alleged statements were made in response to an interrogation. On the other hand, the Government concedes that Lake was in custody but denies that he was subject to interrogation at the time he made the statements. As noted above, one of the factors the Court must consider when determining whether a statement was voluntarily made is whether the police officers know that their conduct is reasonably likely to elicit an incriminating response from the suspect. *Rhode Island,* 446 U.S. at 301, 100 S.Ct. 1682. Here, there is a factual dispute as to whether Lake's statements were made as a result of custodial interrogation.

Lake claims that the officers asked him directly if any drugs, weapons, or money were in his house. In response, the Government maintains that Lake voluntarily made the statements after he observed the officers entering his residence to execute the search warrant and that Lake was at the residence only because he requested that he be allowed to safeguard his dogs. The Government further claims that Lake's comment that he had the gun for protection was voluntarily made after an officer reported that a gun had been found.

With respect to Lake's comments regarding the hidden compartment and his demonstration of how to open the compartment, Lake contends that he made the demonstration to the officers only after first receiving direct instructions from the officers to do so. The Government argues that Lake voluntarily stated that the hidden compartment was empty when detective Hanrahan told him that the vehicle was being impounded because it contained

a "trap." The Government denies that the officers directed Lake to open the compartment or questioned him about how the compartment operated and claims that Lake volunteered to show the officers how to open the compartment.

The Court finds disputed issues of fact regarding the circumstances of Lake's statements in regard to the firearm and the circumstances of Lake's comments and his demonstration regarding the compartment in the vehicle. As such, the Court cannot decide the defendant's motion to suppress the statements without an evidentiary hearing. Accordingly, United States Magistrate Judge Arlene Rosario Lindsay is requested to conduct a suppression hearing with regard to this issue at her earliest convenience.

### 2. As to the physical evidence seized from Lake's residence

Lake argues that the Government's affidavit in support of the search warrant fails to establish probable cause. "A [judge's] 'determination of probable cause should be paid great deference by reviewing courts.'" *United States v. Smith,* 9 F.3d 1007, 1012 (2d Cir.1993) (quoting *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)); *United States v. Dinero Express, Inc.,* 2000 WL 254012, *6, 2000 U.S. Dist. LEXIS 2439, at *17 (S.D.N.Y. Mar. 1, 2002). In determining whether probable cause exists for a search warrant, the issuing judge is to make a practical, commonsense decision whether, given the "totality of the circumstances set forth in the affidavit, there is fair probability that contraband or evidence of a crime will be found in particular place." *Gates,* 462 U.S. at 236, 103 S.Ct. 2317. Indeed, an issuing judge's determination of probable cause will be upheld if she had a "substantial basis for concluding that a search would uncover evidence of wrongdoing." *Id.,* 462 U.S. at 238–39, 103 S.Ct. 2317.

Agent Stephen Schochet, a detective in the Narcotics Bureau with 24–years of narcotics investigatory training and experience, presented to Nassau County Court Judge Palmieri a thirty-six page affidavit which alleged that over the past ten months the Narcotics Bureau had been investigating the distribution of cocaine and marijuana in the City of Long Beach and specifically the narcotics and marijuana distribution network led by Lake. Detective Schochet noted that Lake had several previous narcotics arrests and one felony narcotics conviction. The affidavit reported that in the previous ten months, numerous individual arrested for the sale and possession of cocaine in Long Beach had identified Lake as their source of supply and that an informant observed Lake selling cocaine base to an intermediary during the investigation. The affidavit described how individuals who made frequent, short-term visits to the residence appeared to engage in hand-to-hand transactions at 45 East Market Street immediately after leaving Lake's residence next door. In the affidavit, Schochet opined that "[b]ased on the number of people entering and exiting the home ..., the frequency of the visits and the visits occurring at all times of the day and night, given the purchases of PCI # 1 ... it is probable that these locations are being used for the sale and possession of narcotics." The affidavit noted that many of the visitors to Lake's residence have prior narcotics arrests and convictions.

Further, the affidavit detailed several of Lake's narcotics conversations intercepted pursuant to eavesdropping warrants. During those conversations, Lake discussed the prices and quantities and agreed to sell an unnamed product and to buy and sell "weed" and "pot." The affidavit contained comments by Lake that he was smoking "reefer" and warned callers that they should not talk on the telephone

and that he thought his telephone may be tapped.

■ Based on the facts set forth in the affidavit, the Court concludes that Judge Palmieri could reasonably believe that a search of Lake's residence would uncover evidence of a crime. Therefore, the Court finds that the affidavit provides sufficient probable cause to support the search warrant. Accordingly, Lake's motion for suppression on the ground that the search warrant lacked probable cause is denied.

■ Lake next moves to suppress the evidence seized from his residence on the ground that the search warrant was overbroad, violating the particularity requirement of the Fourth Amendment, because the supporting affidavit requested authorization to search two other residences, in addition to Lake's. The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularity describing the place to be searched, and persons or things to be seized." A search warrant is sufficiently particular when it enables the executing officers to ascertain and identify with reasonable certainty the items to be seized. *United States v. George*, 975 F.2d 72, 75 (2d Cir.1992) (citing *Steele v. United States*, 267 U.S. 498, 503–04, 45 S.Ct. 414, 69 L.Ed. 757 (1925)); *see also United States v. Vargas*, 621 F.2d 54, 56 (2d Cir.), *cert. denied*, 449 U.S. 854, 101 S.Ct. 150, 66 L.Ed.2d 68 (1980).

■ The particularity requirement does not require that every item or document seized must be specifically identified in a warrant. *George*, 975 F.2d at 78; *United States v. Riley*, 906 F.2d 841, 844–45 (2d Cir.1990). Indeed, generic terms may be used to describe the materials to be seized so long as the warrant identifies a specific illegal activity to which the item related. *George*, 975 F.2d at 76. Constitutional particularity requires only that a warrant be "sufficiently specific to permit the ra-

tional exercise of judgment [by the executing officers] in selecting what items to be seized." *United States v. LaChance*, 788 F.2d 856, 874 (2d Cir.) *cert. denied*, 479 U.S. 883, 107 S.Ct. 271, 93 L.Ed.2d 248 (1986) (quoting *Vargas*, 621 F.2d at 56).

■ In the present case, the Government correctly points out that the challenged warrant related only to Lake's residence. Further, the warrant did not authorize the seizure of all of Lake's records. Instead, the warrant identified a specific illegal activity to which the items related and contained nine categories of physical evidence to be seized: (1) narcotics, illegal contraband, narcotics and illegal contraband paraphernalia, records of narcotics and illegal contraband transactions; (2) U.S. currency, money orders, records of money transfers, driver's licenses, social security cards and other documents of identification and any photographs establishing or tending to establish the identity of any person; (3) records of vehicle purchases or transfers; (4) bank books, records from bank statement accounts, safe deposit keys, financial accounts, including records stored inside a computer, computer organizer, or in a computer program; (5) equipment or instruments used to count money and evidence of any methods which show the disposition of money; (6) cellular telephones (including the information electronically stored therein), battery packs and other attachment and accessories; (7) digital pagers and the information contained therein; (8) telephone or address books, in electronic or paper form, and the information written or stored therein; and (9) telephone answering machines and the contents of any messages received thereby or stored therein. The mere fact that the supporting affidavit addressed three separate residences does not render the search warrant for Lake's residence over-

broad. As noted above, probable cause existed to issue the warrant for his residence. Further, the warrant for his residence contained a clear and easily understood listing of the types of items to be seized. Accordingly, the Court finds that the warrant is not overbroad and satisfies the particularity requirement.

■ Even if the warrant was overbroad or issued without sufficient probable cause, the good faith exception to the exclusionary rule would prevent suppression of the evidence. Evidence seized pursuant to a challenged warrant is admissible provided that the police officer relied in good faith on a warrant issued by a neutral and detached judicial officer. *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The test for objective good faith is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate judge's authorization." *United States v. Moore*, 968 F.2d 216, 222 (2d Cir.1992).

As already noted, the Court finds that Judge Palmieri made his determination of probable cause based on the thirty-six page supporting affidavit, which contained information based on a ten month investigation by a detective with 24–years of narcotics investigatory training and experience. Therefore, the officers' reliance on the warrant based on Judge Palmieri's determination was objectively reasonable. Accordingly, Lake's motion to suppress all the evidence seized from his residence on January 7, 1999 is denied.

■ Finally, Lake moves to suppress the firearm seized from his residence because it is "fruit of the poisonous tree" obtained by unwarned custodial investigation. *Wong Sun v. United States*, 371 U.S. 471, 484–85, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In response, the Government contends that the firearm should not be suppressed, even if Lake was subject to custodial interrogation, because the firearm

would have been inevitably discovered in the course of the search. Unlawfully obtained evidence may still be admitted if evidence would have been acquired lawfully through an independent source. *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *United States v. Whitehorn*, 829 F.2d 1225, 1231 (2d Cir. 1987) (discovery inevitable where warrant application for search of apartment was being prepared well before unlawful search of apartment, and "overwhelming probable cause" existed without reference to anything discovered in apartment). Because the Court finds that the affidavit in support of the search warrant supported probable cause to search Lake's residence, the Court concludes that the officers would have inevitably found the firearm pursuant to the valid search. Accordingly, Lake's motion to suppress the firearm is denied.

### 3. As to the physical evidence related to the vehicle

Lake argues that the evidence of cocaine residue recovered from the Toyota Celica's compartment must be suppressed. Lake claims that while authorities arguably have a right to conduct an inventory search, such search must be conducted pursuant to established inventory procedures. Lake argues that the ionscan search of the hidden department is not an inventory search conducted pursuant to standard impound procedures. The Government does not dispute that the ionscan is not an inventory search.

Lake further contends that officers conducted the ionscan test six months after they illegally seized the vehicle, thereby violating the Fourth Amendment. In response, the Government argues that a warrant was not required if the officers had probable cause to believe that the vehicle contained evidence of a crime and that it is irrelevant whether the ionscan test was conducted months after seizure of the vehicle.

Police officers may conduct a full, warrantless search of a vehicle if they have probable cause to believe that the vehicle contains evidence of a crime. *California v. Acevedo*, 500 U.S. 565, 580, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991); *United States v. Harwood*, 998 F.2d 91, 96 (2d Cir.), *cert. denied*, 510 U.S. 971, 114 S.Ct. 456, 126 L.Ed.2d 388 (1993). Therefore, the failure to obtain a search warrant for the vehicle does not automatically invalidate the ionscan search of the compartment. In addition, "[t]here is no requirement that [a] warrantless search of a vehicle occur contemporaneously with its lawful seizure." *United States v. Johns*, 469 U.S. 478, 487, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985) (citing cases). However, while officers may search a vehicle without a warrant after it has been impounded, officers must have probable cause to believe the vehicle contains evidence of a crime. *Michigan v. Thomas*, 458 U.S. 259, 261, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982). "Only a probability or substantial chance of criminal activity, not an actual showing of such activity is necessary." *United States v. Harwood*, 998 F.2d 91 (2d Cir.1993) (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Here, the Government has failed to set forth any facts to support their contention that the test was part of a standardized procedure or that there was sufficient probable cause for the DEA technician to conduct a highly sophisticated search in the vehicle's compartment. Therefore, Lake's motion to suppress the evidence related to the vehicle is granted.

## B. The Motion to Dismiss Counts One, Two, Six and Eight of the Superseding Indictment

Lake moves to dismiss counts one, two, six and eight of the indictment pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure on the ground that there was an unnecessary delay between the date of his arrest January 7, 1999 and the date of his indictment in 2001. Counts one and two charge Lake with conspiracy and counts six and eight charge Lake with a firearm violation.

In this Court's decision, dated October 5, 2002, the defendant Alphonse Lake made similar arguments, and the Court denied Alphonse Lake's motion to dismiss count seven on Fed.R.Crim.P. 48(b) grounds and noted that the Alphonse Lakes was not "held to answer to the district court" until he was arrested on federal charged on June 6, 2001. The six day delay between his arrest on June 6, 2001 and the grand jury presentation on June 12, 2001 was not an "unnecessary delay" under Rule 48(b). Accordingly, the Court adopts the reasoning from its October 5, 2002 decision and finds that Lake's motion to dismiss pursuant to Rule 48(b) is similarly denied.

In addition, Lake contends that the Government's failure to act violated his due process rights because a now-deceased individual, Hubert McDaniel, would have provided exculpatory information regarding the firearm seized from his residence. The Due Process Clause requires the dismissal of an indictment because of pre-indictment delay only when the delay causes "substantial prejudice" to the defense and the delay is an "intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971); *United States v. Chin*, 1997 WL 138711, *1, 1997 U.S.App. LEXIS 5433, at *4 (2d Cir. Mar. 21, 1997). A defendant bears the "heavy burden" of proving both that he suffered actual prejudice because of the alleged pre-indictment delay and that such delay was a course

intentionally pursued by the government for an improper purpose. *See United States v. Cornielle*, 171 F.3d 748, 752 (2d Cir.1999); *United States v. Scarpa*, 913 F.2d 993, 1014 (2d Cir.1990); *United States v. Hoo*, 825 F.2d 667, 671 (2d Cir. 1987).

■■■ Lake neither describes the exculpatory information McDaniel would have been able to provide nor indicates when McDaniel passed away. Lake's bald assertion that a deceased individual would have provided some exculpatory information is insufficient to establish actual prejudice. *Marion*, 404 U.S. at 325–26, 92 S.Ct. 455 (holding that dismissal is not required when a defendant established only the "possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost ... these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment"). Therefore, Lake's motion to dismiss counts one, two, six, and eight is denied.

### C. The Motion to Suppress the Evidence Seized from Lake's Residence on June 6, 2001.

Lake moves to suppress the evidence recovered from his residence on June 6, 2001 on the ground that the arresting officers did not have a search warrant and that in making the arrest, the officers made a "complete search of the premises and seized documents." The Government denies a search was ever made on Lake's residence and thus contends that there is no evidence to be suppressed. Based upon the representation made by the Government, the Government is precluded from introducing any evidence arising out of Lake's arrest on June 6, 2001.

### D. The Motion to Sever Counts Six, Seven and Eight of the Superseding Indictment

Lake argues that counts six, seven and eight of the superseding indictment should be severed because joint trials of the offenses and the defendants would violate his right to receive a fair trial. Counts six and eight charge Lake with being a felon in possession of a firearm violation and possession of a firearm with an obliterated serial number. Count seven charges defendant Alphonse Lake with being a felon in possession of a firearm violation. Lake contends that a joint trial will result in "prejudicial spillover" from evidence admitted to prove crimes with which he was not charged.

The defendants Alphonse Lake and Sylvester Lake made similar arguments, and in its October 5, 2002 decision, the Court concluded that counts six, seven and eight are properly joined pursuant to Rule 8 of the Federal Rules of Criminal Procedures and that Rule 14 of the Federal Rules of Criminal Procedure does not require severance of those counts. This Court adopts the reasoning from the October 5, 2002 decision and finds that the defendants and offenses are properly joined under Rule 8. Furthermore, the Court finds that Lake has not demonstrated the existence of a serious right that a joint trial will compromise a specific trial right or will prevent the jury from making a reliable judgment about guilt or lack of guilt. *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993); *United States v. Rahman*, 189 F.3d 88, 122 (2d Cir.1999). Accordingly, his request for severance pursuant to Rule 14 is denied.

### III. CONCLUSION

Having reviewed the submissions of the parties, it is hereby

ORDERED, that Lake's motion to suppress the statements made by him regarding the firearm and the vehicle's compartment on January 7, 1999 is **DEFERRED**, pending the outcome of the suppression hearing; and it is further

ORDERED, that Lake's motion to suppress the statements is referred to United States Magistrate Judge Arlene Rosario Lindsay to conduct a suppression hearing regarding Lake's January 7, 1999 statement at her earliest convenience; and it is further

ORDERED, that Lake's motion to suppress all the physical evidence seized from his residence on January 7, 1999 is **DENIED**; and it is further

ORDERED, that Lake's motion to suppress the evidence related to the 1990 Toyota Celica is **GRANTED**; and it is further

ORDERED, that the Government is precluded from entering into evidence any evidence obtained on June 6, 2001 from Lake's residence; and it is further

ORDERED, that Lake's motion to dismiss counts one, two, six and eight of the superseding indictment is **DENIED**; and it is further

ORDERED, that Lake's motion to sever the trials of counts six, seven and eight and to sever his trial from that of his co-defendants is **DENIED**.

**SO ORDERED.**