**UNITED STATES of America**

v.

**James RUSSO, Rita Russo Elizabeth Russo, Rudolfo Russo, Thomas Russo.**

**No. 05 CR 1326 SCR.**

United States District Court, S.D. New York.

Feb. 21, 2007.

**305**

## MEMORANDUM DECISION AND ORDER.

ROBINSON, District Judge.

Defendants James Russo, Rita Russo, Elizabeth Russo, Rudolfo Russo, and Thomas Russo are charged with various counts of wire fraud, money laundering, and conspiracy. These counts relate to an alleged scheme to defraud would be investors of a supposedly non-existent gold mine in Brazil, as well as schemes to defraud persons over the internet by operating a series of supposedly fraudulent businesses. Defendants filed various pre-trial motions for suppression of evidence, discovery, and bills of particulars.[1]

### A. Motion to Suppress Evidence

Pursuant to search warrants signed by Magistrate Judge Kevin Nathaniel Fox on November 30, 2005, the government seized financial/business records and correspondence from "known victims" from the Russo home ("the New City premises") and from their place of business ("the Garnerville premises"). Defendants move to suppress this evidence and the leads obtained from those locations, arguing that the warrants in question were not supported by probable cause, and that they were overbroad. Defendants' motions to suppress are denied.

The law on this subject is well settled. A valid search warrant may only issue upon probable cause. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "[T]he probable cause standard simply requires a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the magistrate] ..., there is a fair probability that contraband or

Susanne Brody, Federal Defenders of New York, Stephen R. Lewis, Stephens, Baroni, Reilly & Lewis, LLP, White Plains, NY, Kevin P. Gilleece, Gilleece & Gilleece, White Plains, NY, Vincent L. Briccetti, Briccetti, Calhoun and Lawrence, White Plains, NY, Marilyn Sternlicht Reader, Larchmont, NY, for James Russo, Rita Russo Elizabeth Russo, Rudolfo Russo, Thomas Russo.

Margaret Garnett, New York, NY, for United States of America.

1. Each of the Defendants either joins in the others' motions to the extent applicable, or requests permission to join in their co-defendants' motions to the extent applicable. The Court will therefore address each motion as if it was made collectively.

evidence of a crime will be found in a particular case." *United States v. Martin*, 426 F.3d 83, 86 (2d Cir.2005)(internal quotations and citations omitted). The probable cause standard is a "practical, nontechnical conception" based on "factual and practical considerations of everyday life." *Gates*, 462 U.S. at 232, 103 S.Ct. 2317.[2]

 In reviewing a magistrate's probable cause determination, a reviewing court is to "ensure that the magistrate had a substantial basis for ... [concluding] that probable cause existed", *id.* at 214, 103 S.Ct. 2317 (internal quotations and citations omitted), based on a totality of the circumstances. *Id.* at 233, 103 S.Ct. 2317. A finding of probable cause by a magistrate is entitled to substantial deference, and doubts should be resolved in favor of upholding the warrant. *United States v. Singh*, 390 F.3d 168, 181 (2d Cir.2004); *United States v. Rosa*, 11 F.3d 315, 326 (2d Cir.1993).

 Applying these principles, this Court holds that the warrants signed by Magistrate Judge Fox were supported by probable cause. With respect to the New City premises, the affidavit in support of the warrants alleged various fraudulent activities by the Defendants over nearly 20 years, during which time Defendants resided in the New City premises. The affidavit also states that various acts related to the gold mine and internet schemes were connected to the New City premises. While it is unnecessary to go through each and every supporting fact in the affidavit, the Court notes, for example, that the affidavit states that Defendant Rudolfo

Russo faxed one of the victims of the fraud, asking him to transfer funds to the account of a "Beneficial Realty LLC". Beneficial Realty listed Defendant Elizabeth Russo as President, had no offices outside of the New City premises, and had four vehicles registered to it at the New City Premises. *See* Affidavit of Benjamin Lifsey (hereinafter "Lifsey Aff.") at ¶ 9(m) and n. 1. In addition, the affidavit states that Western Union records indicated that one of the victims sent money to members of the Russo family on 24 occasions between January 2003 and August 2004. *Id.* at n. 2. Defendants also provided victims of the alleged gold mine scheme with documents from a "Universal Landmark Company of South America Ltd.", which was registered as a New York domestic business corporation on or about April 9, 1987 with an address at the New City premises, and re-registered on our about April 27, 1993. *Id.* at ¶ 10. James Russo also opened a bank account in the name of Universal Landmark in 1991, with an address of the New City premises. *Id.* at ¶ 11. The affidavit also identifies various fraud related activities connected to a "Global Liquidators, Closeouts & Auctioneers LLC", for which Elizabeth Russo opened a business checking account in July 2004, listing her personal mailing address as the New City premises. *Id.* at ¶ 21. Global Liquidators also had one vehicle registered at the New City premises. *Id.* at ¶ 31 With respect to the Garnerville premises, the affidavit identifies fraud related activities of an "Action Liquidators and Auctioneers, Inc.", similar to those of Global Liquidators, with a business loca-

---

**2.** At the outset, the Court rejects Defendants' argument that the warrants in question were not supported by probable cause because the affidavit supporting the warrants stated that evidence was "likely" to be found at the premises, while the probable cause standard involves "probabilities not likelihoods". De-

fendants identify no way to distinguish between a "probability" and a "likelihood", nor do they address why they believe that the word "likely" indicates any less of a probability than the words "probably", or "substantial chance".

tion at the Garnerville premises. *Id.* at ¶ 34. Defendants James Russo and either Rudolfo Russo or Thomas Russo were observed leaving New City premises, and later parked outside the Garnerville premises. Elizabeth Russo had also been observed leaving the Garnerville premises. *Id.* at ¶ 34. Given the detailed fraud related activities identified in the affidavit, and the connections identified to the premises in question, this Court holds that the search warrants in question were supported by sufficient probable cause.

 Defendants argue that the warrant was not supported by probable cause because connections between the purported criminal activity surrounding the fraud and the premises were stale. This argument is without merit. Facts in support of an affidavit must be "so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *United States v. Beltempo,* 675 F.2d 472, 477 (2d Cir.1982). "Whether the proof meets this test must be determined by the circumstances of each case" *Id.* (citing *Sgro v. United States,* 287 U.S. 206, 210–11, 53 S.Ct. 138, 77 L.Ed. 260 (1932)). "[T]he principal factors in assessing whether or not the supporting facts have become stale are the age of those facts and the nature of the conduct alleged to have violated the law." *United States v. Diaz,* 176 F.3d 52, 109 (2d Cir.1999). "Where a supporting affidavit presents a picture of continuing conduct as opposed to an isolated instance of wrongdoing...the passage of time between the last described act and the presentation of the application become less significant." *Id.* While it is again unnecessary to discuss all the factual support in the affidavit, the Court notes that

the affidavit here identifies fraudulent schemes which purported to begin as early as 1987, *see* ¶ Lifsey Aff. at ¶¶ 9(a), 10, and identifies acts related to those schemes as recently as September 2005. *See id.* at ¶¶ 9(m), 41(h). In addition, the items sought in the affidavit (bank records, computer equipment, etc) include voluminous items usually stored in secure locations, under the control of the owner, for long periods of time. Given the time frame of the fraud alleged, and the likelihood that the records sought would be retained, the Court holds that the probable cause determination here was not based on stale information.

 With respect to scope, Defendants argue that the warrants in question were overbroad in that they did not "identify specific frauds or participants" or "in anyway limit [their] scope to the fraud schemes alleged." [3] This argument is also without merit. "A warrant must be sufficiently specific to permit the rational exercise of judgment [by the executing officers] in selecting what items to seize." *United States v. Shi Yan Liu,* 239 F.3d 138, 140 (2d Cir.2000)(internal quotations and citations omitted); *United States v. Lake,* 233 F.Supp.2d 465, 471 (E.D.N.Y.2002). Generic terms may be used to describe the materials to be seized so long as the warrant identifies a specific illegal activity to which the item related. *Lake,* 233 F.Supp.2d at 471 (citing *United States v. George,* 975 F.2d 72, 76 (2d Cir.1992)). Here the warrants in question identify various large classes of materials, but identify the specific activities (frauds) and criminal statutes (18 U.S.C. §§ 1343, 1349, 1956, and 1957) which the materials evidence.

---

**3.** Defendants specifically identify paragraph 8 to Schedule A of both warrants, which authorizes seizure of "Any cash, checks or other negotiable financial instruments that may be proceeds of frauds..." and paragraph 10 of Schedule A which authorizes seizure of "[a]ny other documents constituting evidence of the commission of the violation of the federal laws [set forth in the warrant]."

Accordingly, the Court finds that the warrant is not overbroad and satisfies the particularity requirement of the Fourth Amendment. *Accord Lake,* 233 F.Supp.2d at 471–72.

The warrants to search the New City premises and the Garnerville premises were therefore supported by probable cause, and were not overbroad. Defendants' motions to suppress evidence seized at the New City premises and the Garnerville premises are therefore denied.

**B. Production of *Brady, Giglio* and *Jencks* Material.**

Defendants move to have the Government provide early production of *Brady, Giglio,* and *Jencks Act* materials, sixty days prior to trial.[4] Defendants' motions for early disclosure are denied.

 Under *Brady v. Maryland,* the Government is required to disclose evidence to defendants which is material to either guilt or punishment. 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Such materials must be disclosed "no later than the point at which a reasonable probability will exist that the outcome would have been different if an earlier disclosure had been made." *United States v. Coppa (In re United States),* 267 F.3d 132, 142 (2d Cir.2001). Thus due process requires only that *Brady* material be disclosed "in time for effective use at trial." *Id.* (citing cases). Here, the government has represented that it is not aware of any *Brady* material in this case, but recognizes its continuing obligation to disclose all such material. As the government has, in good-faith, asserted that it has met, and will continue to meet its obligations, there is no reason to compel disclosure of *Brady* material at this time. *See United States v. Perez,* 940 F.Supp. 540, 553 (S.D.N.Y.

1996); *United States v. Schwimmer,* 649 F.Supp. 544, 549 (E.D.N.Y.1986).

 With respect to Defendants' motions for early disclosure of impeachment material under *Giglio v. United States,* 405 U.S. 150 (1972), the government is only required to produce *Giglio* material "in time for effective use at trial." *Perez,* 940 F.Supp. at 553. Here the government has represented that it intends to produce *Giglio* material no later than the Friday of the week before a witness is scheduled to testify at trial, in accordance with its usual practice. To the extent that the government's disclosure in this case proves unusually voluminous or complex, the government has in good-faith represented that it intends to produce *Giglio* material sufficiently in advance of their witnesses' testimony so as to avoid any delay in trial. At the time of those disclosures, to the extent that Defendants feel that additional time is necessary given the volume or complexity of the materials provided, the Court will consider applications to continue or recall witnesses. It is unnecessary, however, to order early disclosure at this time.

 With respect to prior statements of witnesses, the government is under no obligation to produce this *Jencks Act* material until after a witness has testified on direct examination at trial. 18 U.S.C. § 3500(a). District courts lack authority to compel early disclosure. *In re United States,* 834 F.2d 283, 287 (1987). Defendants' motions to compel disclosure of *Jencks Act* material are therefore denied.

**C. Rule 404(b) material**

 Defendants request disclosure of evidence the government will seek to

4. Thomas Russo merely requests thirty days advance disclosure for *Giglio* and *Jencks Act* material.

admit under Rule 404(b). Rule 404(b) only requires "reasonable notice in advance of trial" for the admission of prior convictions and bad acts. The rule establishes no minimum time, however, because "the evidence the government wishes to offer may well change as the proof and possible defenses crystallize." *United States v. Matos–Peralta,* 691 F.Supp. 780, 791 (S.D.N.Y.1988). The government has in good faith noted its obligations under Rule 404(b), and indicated that it intends to provide notice of the 404(b) evidence it intends to introduce fourteen days before the beginning of trial, and perhaps earlier if the evidence proves to be unusually voluminous or involves acts that may be previously unknown to defense counsel. There is therefore no need to issue the order Defendants seek. *United States v. Ramirez,* No. Cr. 91–493, 1991 WL 177239, *2, 1991 U.S. Dist. LEXIS 12183, *4 (S.D.N.Y. August 30, 1991)("The government has represented that it will provide timely notice of any intent to introduce [404(b) ] evidence so that there is no need to issue the order defendant seeks."). Defendants' motions are therefore denied.

## D. Witness and Exhibit Lists

Defendants seek production of the government's witness list and exhibit list thirty days in advance of trial. Defendants' motions are denied.

 "In the absence of a specific showing that disclosure [of a witness list] was both material to the preparation of [the] defense and reasonable in light of the circumstances surrounding [the] case", the request for a witness list should be denied. *United States v. Bejasa,* 904 F.2d 137, 139–140 (2d Cir.1990)(quoting *United States v. Cannone,* 528 F.2d 296, 301 (2d Cir.1975); *United States v. James,* No. Cr. 02–778, 2005 U.S. Dist. LEXIS 40695, *17 (E.D.N.Y. December 6, 2005))("[G]enerally the Second Circuit has held that such material will be ordered disclosed to the defense only where there has been a particularized showing of need.") Defendants here make no particularized showing that the requested witness list is material to the preparation of the defense. Rather, Defendants merely argue that given the complexity of the case, disclosure of the government witness list will level the playing field. It would be inappropriate for this Court to grant Defendants' motions when they are only supported by an abstract statement of need. *See Cannone,* 528 F.2d at 302. In any event, the government has indicated that it intends to produce its witness list along with its *Jencks* disclosure. Absent a showing of a particularized need to receive the list earlier, which Defendants do not make here, there is no need for a Court order at this time.

 With respect to the designation of trial exhibits, the government has produced approximately 16,000 pages of documents, as well as several audio tapes and transcripts. Given the volume of discovery provided by the government, Defendants request that the government identify its trial exhibits thirty days prior to trial. Rule 16 does not require designation of trial exhibits within any particular timeframe, *see United States v. Nachamie,* 91 F.Supp.2d 565, 570 (S.D.N.Y.2000), but this Court has discretion to order such designation in order to facilitate an orderly trial. *United States v. Palermo,* No. Cr. 99–1199, 2001 WL 185132, *6, 2001 U.S. Dist. LEXIS 1855, at *18 (S.D.N.Y. February 26, 2001)(holding that notwithstanding that Rule 16 only requires the government to produce documents in accordance with the Rule, a court does have discretion, in the interest of facilitating an orderly trial, to require identification of a subset of materials produced that will be offered in evidence). The cases cited by Defendants, however, do not indicate as lengthy a time

period as they request. In *United States v. Falkowitz*, for example, the district court ordered the designation of exhibits one week before trial, where the government had produced about 100,000 pages in a prosecution for conspiracy and wire fraud. 214 F.Supp.2d 365 (S.D.N.Y.2002). In *United States v. Earls*, a wire fraud prosecution, the district court ordered designation of exhibits 10 days before trial due to the voluminous nature of discovery. No. 03 Cr. 364, 2004 WL 350725, 2004 U.S. Dist. LEXIS 2758 (S.D.N.Y. Feb. 25, 2004). Disclosure of trial exhibits 30 days prior to trial, where the volume of discovery is not nearly as great as in other similar prosecutions, therefore, is unnecessary. Defendants' requests for disclosure of trial exhibits 30 days in advance of trial are therefore denied. Defendants are hereby granted leave to renew their requests for early disclosure when this matter is closer to trial.

### E. Expert Disclosure

■ Defendants concede that Rule 16 does not provide for the specific timing of expert witness disclosures, but it is expected that such disclosures occur in a timely fashion. *See United States v. Pirro*, 76 F.Supp.2d 478, 488 (S.D.N.Y.1999). However, Courts have required disclosure of expert witness testimony as part of its authority to regulate discovery, and to promote an orderly trial. *See id. See also United States v. Perez*, No. 01 Cr. 112, 2001 U.S. Dist. LEXIS 6886, at *18 n. 8 (S.D.N.Y. May 25, 2001)(disclosure required 15 days in advance of trial); *United States v. Lino*, No. 00 Cr. 632, 2001 WL 8356, 2000 U.S. Dist. LEXIS 18753, *64 (S.D.N.Y. Dec. 29, 2000)(disclosure required 15 days in advance of trial). In this case, the government has represented that it if decides to call any expert witnesses at trial, it will provide a written summary of any expert testimony, including the expert's curriculum vitae, two weeks prior to

trial. Given that this case does not appear to require any complex scientific or financial testimony, and Defendants have provided no other reason why an even earlier disclosure will be required, the government timetable for disclosure is deemed sufficient by the Court. Defendants' motions for early disclosure of expert witness testimony are denied.

### F. Statements of Co–Conspirators

■ Defendants further move this Court to compel the government to state whether it intends to offer any statements of co-conspirators under Federal Rule of Evidence 801(d)(2)(E), and if so to specify all such statements and the circumstances of their utterance. Defendants state that it is necessary to litigate the admissibility of such statements pre-trial.

As to Defendants' first request, the government states unequivocally in its opposition papers that it does indeed intend to introduce statements of the defendants in furtherance of the conspiracy, both in the form of documentary evidence and in witness testimony. As to Defendants' request that the government identify all such statements and the circumstances of their evidence, Defendants have identified no reason why the normal process of disclosure through the ordinary course of discovery, rulings on admissibility through motions *in limine*, and objections during the course of trial, are inadequate in this case. Defendants' motions to compel the government to specify all co-conspirator statements it intends to use, and the circumstances of their utterance, are denied.

### G. Bills of Particulars

Defendants seek bills of particulars. Defendants' motions are without merit.

■ The decision to grant a bill of particulars is left to the discretion of the trial court. *United States v. Salazar*, 485

F.2d 1272, 1278 (2d Cir.1973); *Perez,* 940 F.Supp. at 550. A bill of particulars is not an investigative tool, or a tool of discovery, but rather "is meant to apprise the defendant of the essential facts of a crime and should be required only where the charges of an indictment are so general that they do not advise a defendant of the specific acts of which he is accused." *Perez,* 940 F.Supp. at 550 (citing cases); *United States v. Mitlof,* 165 F.Supp.2d at 558, 569 (S.D.N.Y.2001). "The ultimate test must be whether the information sought is necessary, not whether it is helpful" and therefore "[t]he Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crime charged, or a preview of the Governments evidence or legal theories." *Mitlof,* 165 F.Supp.2d at 569.

▮ Defendants request various specific details regarding the allegations in the indictment, including the exact words allegedly used by the Defendants, the places used to commit the alleged crimes, dates and places of the overt acts in furtherance of the alleged conspiracies, and the like. Defendants further argue that to the extent that they are accused of money laundering, the indictment does not specify which of the schemes they are accused of participating in the laundered money came from. The indictment alleges in substantial detail the outlines of the alleged wire fraud and money laundering schemes, the dates of various acts committed by the Defendants, and the amounts of the alleged money laundering transactions. Where as here, Defendants have been given significant details about the crimes alleged, it cannot be said that "the charges of the indictment are so general that they do not advise the Defendants of the specific acts which [they are] accused." *See United States v. Torres,* 901 F.2d 205, 234 (2d Cir.1990).

Defendants' requests regarding *which* of the alleged acts of wire fraud the particular laundered funds originated in, be it the "gold mine" scheme or the "merchandise scheme"—or both for that matter—is simply a request "to compel the production of the very type of evidentiary minutiae that is not appropriate in a bill of particulars." *Mitlof,* 165 F.Supp.2d at 569. Defendants' additional requests are for the particular identities of various parties mentioned in the indictment, for example, the names of "investors" identified in the indictment, who within the Russo family is alleged to have participated in certain acts, such as inducing potential victims of the Internet scheme, and other specific details regarding the acts in the indictment. Just as before, Defendants are not entitled to the information requested. *See id.* ("wheres, whens and with whoms" are beyond the scope of a bill of particulars). Defendants' requests for bills of particulars are therefore denied.

**H. Conclusion**

For the reasons stated above:

1. Defendants' motions to suppress evidence seized at the New City premises and the Garnerville premises are denied.

2. Defendants' requests for early disclosure of *Brady, Giglio* and *Jencks* material are denied.

3. Defendants' requests for 404(b) material are denied.

4. Defendants' requests for production of the government's witness list and exhibit list thirty days in advance of trial are denied.

5. Defendants' motions for early disclosure of expert witness testimony are denied.

6. Defendants' motions to compel the government to specify all co-conspirator statements it intends to use and

the circumstances of their utterance are denied.

7. Defendants' motions for bills of particulars are denied.

*It is so ordered.*